Filed 3/26/14  P. v. McNary CA2/3
Received for posting 4/29/14

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B246546 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA089270) |
| v. | |
| JUAN McNARY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Juan McNary was convicted of lewd act upon a child under age 14 (Pen. Code, § 288, subd. (a)), following a court trial.[1] He was sentenced to state prison for three years. He contends substantial evidence does not support the verdict. We affirm.

**FACTS**

1. *Prosecution.*

Defendant gave a statement to the police. In the end of January 2011, defendant's nephew and Mike, age 13, were messing around at the residence where defendant, age 44, lived with members of his family, and Mike kept talking about how big his penis is. Mike dared defendant to "suck his dick." Defendant went into his room in the garage, and Mike followed him. Defendant was the sole occupant of the garage. Mike wanted defendant to "suck his dick." He pulled his pants down and told defendant to " 'suck my dick.' " Defendant got to his knees and started to do it for a minute. Defendant had his mouth on Mike's penis for a second. Then, realizing that what he was doing was wrong, defendant got up and walked out. Mike followed him and kept saying he wanted defendant to finish. Defendant told Mike to leave him alone and went to the porch of the house to smoke a cigarette. At the screen door of the porch, Mike pulled out his penis and started "jacking off" for about a minute, stating he wanted defendant to finish. Defendant told Mike to stop, and Mike stopped. Defendant went back to the garage, telling Mike not to follow him. Defendant did not feel a sexual attraction to minors and had never had a sexual incident with a minor before. Defendant preferred partnerships with men all his life. Defendant was sorry he said yes to the dare, and it should have never happened.

Mike testified concerning the incident. Mike was hanging out with one of defendant's nephews. The nephew asked Mike if he wanted to get his penis sucked by defendant, and Mike said okay. The nephew and defendant went into the garage. Mike followed them. Defendant asked Mike to take his pants off. The nephew left.

---

[1] All further references are to the California Penal Code unless otherwise specified.

Mike took off his pants and defendant sucked on it for "about one to two minutes." Mike felt violated. Mike said nothing and was scared. Defendant stopped when Mike heard the nephew's father's truck pull up. Mike and defendant went into the living room and then onto the front porch. On the same day, defendant also slapped Mike on the butt.

2. *Defense.*

Psychologist Dr. Haig Kojian testified. Defendant's I.Q. was 61, which put him in the 0.5 percentile of his peers. Ninety-nine point five percent of his peers scored higher. Defendant functioned in some areas at the level of a 10 year old. Such an individual would have difficulty exercising good judgment in social situations. Defendant had been employed in a number of jobs, including as a cashier at Disneyland. He currently worked as a caregiver for his mother, who had dementia.

3. *Trial court's exhibits.*

In the reports of his two evaluations of defendant, Dr. Kojian stated defendant had been employed in a number of jobs and stated he was " 'gay.' " Defendant experienced command hallucinations to harm himself and others. At the time of the incident, he was not taking his medication because he tended to forget to take it. Defendant told Dr. Kojian, " 'I don't know, it just happened. It shouldn't have happened. It's hard to explain and I feel horrible because it shouldn't have never [*sic*] happened. He was too young.' " Mike told defendant Mike had a " 'big dick' " and wanted to know if defendant did, too. Mike dared defendant to orally copulate him. Defendant was curious about the size of Mike's penis and wanted to determine its size. Defendant experienced command hallucinations telling him to orally copulate Mike. Defendant stopped himself after a while. Mike had his pants down, masturbating and telling defendant to suck it, and defendant walked away. Defendant stated he had had a number of sex partners with age peers, within long-term relationships. He was not interested in sex with teenagers. Testing revealed defendant functioned within the mentally retarded range of intelligence. Dr. Kojian reviewed the police report, which indicated that Mike was not sexually sophisticated.

3

4. *Trial court's ruling*

Defendant had an intellectual and developmental disability. However, "a 10 year old and [a] 44 year old that's supposedly acting like a 10 year old, in my mind, are two different things. . . . [H]e did work at Disneyland, he does understand what he was doing was wrong, he was a caregiver[.] [All] of these things leave me to believe he was a little bit sophisticated, a little bit more knowledgeable, than [one would be led to believe from Dr. Kojian's report]." "Based upon the testing, taking that into consideration and the other additional evidence, I find that he did in fact have the specific intent for the sexual gratification or arousal and that all the other elements of the crime are present . . . ."

## DISCUSSION

1. *Substantial evidence.*

Defendant contends substantial evidence does not support the finding that he acted with a specific intent to arouse either his or the child's sexual desires. We disagree with the contention.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt.

4

' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) The reviewing court does not reweigh the evidence. (*Id*. at p. 12.)

Section 288, subdivision (a) provides: "any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

" ' "[A]ny touching" of an underage child committed with the intent to sexually arouse either the defendant or the child' establishes a section 288 violation. . . . '[T]he touching of an underage child is "lewd or lascivious" and "lewdly" performed depending entirely upon the sexual motivation and intent with which it is committed.' [Citation.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 145-146.)

The record contains sufficient evidence to support the trial court's finding. Oral copulation is an overtly sexual act. It is reasonable to infer from the fact this defendant had a history of sexual relationships with male partners that, when he engaged in performing oral copulation on a male, he did so with an intent to sexually gratify himself or his partner. His history of being in relationships with male partners, his age, and his sexual maturity, and the facts he was currently employed and had previously been employed in jobs involving responsibilities, training, and skills, indicates his intellectual and developmental challenges did not preclude his forming the required intent. Moreover, there is evidence Mike was sexually unsophisticated, defendant wanted to determine if Mike's penis was large, defendant asked Mike to take off his pants so he could orally copulate him, and defendant put his mouth on Mike's penis and sucked it for one to two minutes. This supports the conclusion defendant initiated and engaged in the act for the purpose of sexually gratifying himself or Mike. There is evidence defendant

5

tried to hide his conduct: he had it occur in the privacy of his room; and he stopped when the nephew's father's arrival created a danger of discovery. There was evidence defendant knew that engaging in sexually arousing or gratifying conduct with a minor was wrong. From this evidence of a desire to engage in sexually arousing or gratifying conduct in secret, it is reasonable to infer defendant engaged in the conduct with the intent to sexually arouse or gratify himself or Mike. The evidence that Mike wanted defendant to finish what defendant had started, and masturbated immediately after defendant stopped orally copulating him, indicates Mike experienced sexual arousal from the oral copulation. All of the foregoing is ample substantial evidence that the performance of the act of oral copulation in this case was with the intent to sexually arouse or gratify defendant or Mike, or both. (Compare *In re Jerry M.* (1997) 59 Cal.App.4th 289, 300 [insufficient evidence defendant intended to arouse the child or himself where, among other facts, the defendant was 11 years old, there was no evidence he had reached puberty, the conduct occurred during the day in the presence of others, and defendant did not try to avoid detection].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.                                KITCHING, J.


6